UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

KALA S.,[1]

        Plaintiff,

   v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

        Defendant.

Case. No. 1:18-cv-00934-YY

OPINION AND ORDER

YOU, Magistrate Judge:

    Kala S. ("plaintiff") seeks judicial review of the final decision by the Social Security

Commissioner ("Commissioner") denying her application for Title XVI Supplemental

Security Income ("SSI") under the Social Security Act ("SSA"). This court has jurisdiction

to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

For the reasons set forth below, that decision is REVERSED and REMANDED for

immediate calculation and payment of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the non-governmental party or parties in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member(s).

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI on February 11, 2014, alleging disability beginning on August 17, 1989. Tr. 11. Plaintiff's claim was denied initially and on reconsideration. Tr. 67, 79. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on January 23, 2017. Tr. 39-59. Plaintiff was represented by counsel, and the ALJ took testimony from plaintiff and a vocational expert ("VE"). Following the hearing, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 15-28. After the Appeals Council denied plaintiff's request for review, plaintiff filed a complaint in this court. Tr. 1-6. The ALJ's decision is therefore the Commissioner's final decision subject to review by this court. 20 C.F.R. § 422.210.

## BACKGROUND

Born in August 1989, plaintiff was 27 years old at the time of the ALJ hearing. Tr. 43. Plaintiff is a high school graduate and has no past relevant work history. Tr. 43-44. Plaintiff alleges she is unable to work due to a combination of the following impairments: obesity, learning disorder in reading, dementia due to head trauma, unspecified anxiety disorder, depression, lumbar and thoracic spondylosis, menorrhagia, hypothyroidism, atopic dermatitis, uterine polyp, gestational diabetes, mild thoracic scoliosis, and hearing loss. Tr. 17.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. This sequential analysis

is set forth in Social Security Administration regulations, 20 C.F.R. §§ 404.1520, 416.920, in Ninth Circuit case law, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)), and in the ALJ's decision in this case, Tr. 15-17.

At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since the application date, February 11, 2014. Tr. 17.

At step two, the ALJ determined that plaintiff has the following severe impairments: obesity, learning disorder in reading, dementia due to head trauma, unspecified anxiety disorder, depression, and spondylosis of the lumbar and thoracic spine. *Id.*

At step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or equaled any listed impairment. Tr. 18. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and found that she could perform medium work with the following limitations:

> She can lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently. She can stand and/or walk for about 6 hours in an 8-hour workday, and she can sit for about 6 hours in an 8-hour workday, with normal breaks. She can have no exposure to moving mechanical parts and unprotected height hazards. She is limited to understanding, remembering, and carrying out simple, routine and repetitive instructions that can be learned in 30 days or less. She needs instructions verbally and by demonstration. She is limited to few changes in work setting and work duties and no conveyor belt paced work. She can have no public contact and only occasional direct coworker interaction.

Tr. 19.

At step four, the ALJ determined that plaintiff has no past relevant work. Tr. 26.

At step five, the ALJ determined that considering plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert (VE), she could perform jobs that

exist in significant numbers in the national economy, including hand packager, laundry worker, and kitchen helper.  Tr. 27.

Accordingly, the ALJ determined that plaintiff was not disabled between February 11, 2014, the date on which the application was filed, through the date of the decision, March 17, 2017.  Tr. 28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)).  The reviewing court may not substitute its judgment for that of the Commissioner.  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1205 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "'supported by inferences reasonably drawn from the record.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)); *see also Lingenfelter*, 504 F.3d at 1035.

## DISCUSSION

### I.    Subjective Symptom Testimony

Plaintiff alleges that the ALJ wrongfully discounted her subjective symptom testimony. When a claimant has medically-documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative

evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

### A.    Inconsistent Statements

The ALJ discounted plaintiff's subjective symptom testimony based on inconsistent statements regarding her social limitations, memory limitations, and work history.

Regarding her social limitations, the ALJ found that plaintiff's testimony "regarding an inability to leave the home without accompaniment" is "inconsistent with the record as a whole." Tr. 20. In particular, the ALJ pointed to parts of the record showing that plaintiff could attend appointments and leave home on her own. *Id.*

The record does show that plaintiff can attend appointments, have appropriate affect and rapport with medical providers, go shopping, go out generally, and drive alone. Tr. 18, 20, 25, 167, 332, 411, 422, 490, 495, 533, 538, 563, 594, 603. However, plaintiff only testified that she *avoided* going out alone, not that she was unable to do so. Tr. 46, 47, 294. Thus, the ALJ erred in relying on the purported inconsistency in plaintiff's testimony regarding her social limitations.

Regarding plaintiff's memory, the ALJ found that plaintiff had "moderate" limitation "[i]n understanding, remembering, or applying information." Tr. 18. The ALJ cited inconsistencies in plaintiff's hearing testimony to support that conclusion. Tr. 20, 21. Specifically, the ALJ found that plaintiff's ability to recall instances of forgetfulness contradicts her alleged memory problems. Tr. 20. However, if plaintiff had done the opposite and failed to cite *any* examples of forgetfulness, the ALJ arguably could have relied on that as a reason to reject her testimony. Moreover, the fact that plaintiff remembers *some* things is not inconsistent with having a memory impairment. Thus, it was improper for the ALJ to interpret plaintiff's testimony in this way.

The ALJ also noted that plaintiff's high school records showed she required an Individualized Education Plan for a learning disability in reading but not in memory. Tr. 21. To the contrary, reports and objective testing from plaintiff's high school include concerns regarding her short-term memory. Tr. 256, 279.

Regarding plaintiff's ability to work, the ALJ found that because plaintiff had sought work in the past, there must have been times when she believed she was able to work.[2] Tr. 21. However, the mere fact that plaintiff attempted to find a job is an insufficient reason to discredit her. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) ("That [the claimant] sought employment suggests no more than that he was doing his utmost, in spite of his health, to support himself."); *see also Lingenfelter*, 504 F.3d at 1038-39 ("Under these circumstances, it is at least as likely that the claimant tried to work in spite of his symptoms, not because they were less severe than alleged.").

The ALJ also found that plaintiff's testimony about her employment history was inconsistent with the record. Tr. 22. Plaintiff claimed that she never worked and had no record of past employment or earnings. Tr. 44, 62, 68-69, 79, 146-149, 156, 172-185. However, plaintiff told Dr. Steinbrenner and Dr. Shields that she worked part-time as a waitress and cook for less than three months in 2007, but was fired because she could not keep up. Tr. 490, 494. The fact that plaintiff worked as a waitress or a cook for a couple months—seven years prior to the relevant period—is such a slight inconsistency that it is not a convincing reason for discounting plaintiff's testimony. *See* SSR 16-3p ("Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments . . . . The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). Moreover, this brief stint as a waitress/cook does not demonstrate that plaintiff was capable of full-time employment because she was quickly fired. *See Lingenfelter*, 504 F.3d at 1039 (holding that a

---

[2] Plaintiff testified that she has sought work in the past, but claims that she was never hired due to her forgetfulness. Tr. 44.

trial work period of less than nine months was not evidence that a person is not disabled).

Accordingly, the ALJ erred in rejecting plaintiff's testimony on this basis.

**B.      Activities of Daily Living**

An ALJ may discount a claimant's symptom testimony if it is inconsistent with the claimant's activities of daily living or if the claimant's participation in everyday activities indicates capacities that are transferrable to a work setting.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012).  A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative finding.  *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick,* 157 F.3d at 722.

The ALJ found that plaintiff's ability to attend medical appointments and go out alone was inconsistent with her claimed social and memory limitations.  Tr. 20.  However, as discussed above, although plaintiff can go out alone, she avoids it.  Tr. 46-47.  Plaintiff testified that she prefers to go shopping at night when fewer people are out, and she cannot take her children to school or the park for fear of panic attacks.  Tr. 47, 53.

Moreover, using plaintiff's ability to attend medical appointments as a basis for discounting her testimony would be problematic given that a claimant's *failure* to attend medical appointments is a proper basis for discounting testimony.  *See Molina*, 674 F.3d at 1113 (quoting *Tommasetti*, 533 F.3d at 1039) ("[I]n assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."); *Taylor v. Astrue*, No. 08-cv-0230-AA, 2009 WL 10690945, at *8 (D. Or. Mar. 25, 2009) (citing the claimant's failure to attend medical appointments as a proper basis for discounting her testimony); *Munguia v. Astrue*, No. C 09-02440 PJH, 2010 WL 760446, at *5-6

(C.D. Cal. Mar. 4, 2010) (same); *see also Blake L. v. Berryhill*, No. 3:17-cv-01647-YY, 2019 WL 289098, at *9 (D. Or. Jan 4, 2019), *report and recommendation adopted* 2019 WL 281285 (D. Or. Jan. 22, 2019) (holding that a claimant's ability to attend medical appointments was not a proper basis for rejecting a treating psychiatrist's opinion).

The ALJ also observed that plaintiff is independently capable of housework and childcare. Tr. 20. However, the record shows that while plaintiff can, at times and to some extent, engage in such activities, she receives significant help from her husband and his parents. Tr. 18, 44, 45, 49, 50, 52, 165. For instance, plaintiff's mother-in-law, father-in-law, and husband perform most of the childcare. Tr. 52. Even when plaintiff carries out tasks, she sometimes requires reminders to do so. Tr. 167, 168. Because of her memory problems, plaintiff has caused kitchen fires, ruined dishwasher loads, and forgotten her son's age on his birthday. Tr. 45, 46, 52-53. Thus, while the record shows that plaintiff is involved in housework and childcare, it does not support the ALJ's interpretation that she is successful at doing it independently.

The ALJ noted that while plaintiff claims to need reminders to do chores, she can manage her money, remember to pay her bills, maintain her self-care and personal hygiene, and prepare meals without difficulty. Tr. 20. On her function report, plaintiff checked boxes indicating that she could pay bills and did not need special reminders to take care of personal needs and grooming. Tr. 166, 168. However, the record elsewhere reflects that plaintiff needs to refer to a list of bills, indicating that she cannot rely solely on her memory. Tr. 495. Furthermore, despite having some ability to pay her bills, the record otherwise describes serious issues with memory, including causing fires, in addition to objective testing showing memory impairment. Tr. 45, 46, 52-53, 295. As a whole, the ALJ did not provide convincing examples of activities of daily

living that are inconsistent with alleged limitations or that show transferrable work skills;
therefore, it was improper to use plaintiff's activities as a basis for discounting her testimony.

### C.     Conservative Treatment for Back Pain and Mental Impairments

The ALJ noted that while plaintiff alleged back pain, she only sought treatment for those symptoms two times during the relevant period. Tr. 21-22. On those occasions, plaintiff received only "conservative and routine treatment," and remedies such as ice, heat, rest, and over-the-counter medications seemed to suffice. Tr. 22, 501. Conservative treatment can be "sufficient to discount a claimant's testimony regarding severity of an impairment," as can a history of treating physical ailments with over-the-counter pain medication. *Parra*, 481 F.3d at 750-51 (citation omitted). The ALJ found that the medical evidence did not support the degree of limitation plaintiff alleges in terms of her backpain. Tr. 22. Based on plaintiff's conservative treatment, that finding is proper.

Similarly, plaintiff sought treatment for her mental impairments, including symptoms of depression, diminished concentration, and anxiety, on only one occasion. Tr. 23. The ALJ acknowledged that infrequent treatment does not disprove the existence of mental impairments, but does reasonably undermine the intensity, persistency, and limiting effects of symptoms. Tr. 23-24. Notably, the ALJ's assessment that plaintiff's mental health was treated conservatively goes unchallenged. Moreover, the fact that plaintiff sought treatment only once supports the ALJ's finding. Thus, the ALJ properly relied on plaintiff's conservative treatment for mental impairments as a basis for discounting her testimony.

While, as discussed above, some of the ALJ's reasons for rejecting plaintiff's subjective symptom testimony were improper, those errors are harmless because the ALJ properly relied on plaintiff's conservative treatment for back pain and mental impairments. *See Batson*, 359 F.3d at

1197 (ALJ's erroneous reason for discrediting claimant's pain testimony deemed harmless in light of "all the other reasons given by the ALJ").

## II.     Medical Opinion Evidence

Plaintiff argues that the ALJ erred by giving "partial weight" to the opinions of examining physicians Dr. Warner and Dr. Shields.  Pl. Br. 8-11, ECF #14.  The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).  Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

### A.     Dr. Warner

Plaintiff described to Dr. Warner a history of physical abuse by her biological father from "as young as she can remember."  Tr. 292.  Plaintiff's father also sexually abused plaintiff from when she was nine to 17 years old.  *Id.*  Plaintiff began disassociating when she was 12 years old, losing periods of time two to three times a week.  *Id.*  She continued to have periods of disassociation into adulthood.  *Id.*  When she was 12 years old, plaintiff attempted suicide by

cutting her wrists.  *Id.*  Plaintiff stated that both of her parents were alcoholics, and that she was in and out of foster care.  Tr. 292-93.

Plaintiff also described a history of head trauma and passing out due to dehydration.  Tr. 291.  When plaintiff was six years old, she hit her head while riding a bicycle.  Tr. 293.  At age seven, plaintiff fell out of a bunk bed, hit her face, broke her nose, and lost consciousness.  Tr. 292.  At nine years old, plaintiff passed out twice due to dehydration and was hospitalized one of those times.  Tr. 293.  At 11 years old, plaintiff fell down a flight of stairs after getting dizzy from dehydration.  *Id.*  Plaintiff reported that she has passed out seven times in her life.  Tr. 292.

Dr. Warner concluded that plaintiff exhibited symptoms of dementia due to head trauma.  Tr. 296.  Dr. Warner also opined that even minimal changes in mental demands or environment would likely cause plaintiff to decompensate because of her limited memory and need for reminders and lists.  Tr. 302.  In a supplemental report, Dr. Warner checked a box indicating that plaintiff has marked limitation in her ability to remember locations, work-like procedures, and detailed instructions, and moderate limitation in understanding and remembering short and simple instructions.  Tr. 303.  Dr. Warner opined that plaintiff has a "sufficient working memory" but "her ability to retain information is significantly impaired," which "significantly interferes with her ability to attend to her activities of daily living."  Tr. 295, 297.

The ALJ gave Dr. Warner's opinion partial weight "because it is not entirely consistent with the record as a whole."  Tr. 25.  Specifically, the ALJ noted "there is no objective medical evidence to support [plaintiff's] allegations of head trauma" and Dr. Warner relied "heavily upon . . . uncorroborated subjective reports."  *Id.*  Plaintiff argues that the ALJ contradicted her own opinion by discounting Dr. Warner's diagnosis of dementia while at the same time determining at step-two that dementia due to head trauma was a severe medical impairment.  Pl. Br. 9, ECF

#14, Tr. 17. The ALJ's inconsistency is indeed problematic. While the Commissioner argues that the existence of a severe impairment "is not determinative of particular limitations or a finding of disability," Def. Br. 17, ECF #19, the existence of a severe impairment is determinative of the *existence* of that impairment. The ALJ cannot conclude that plaintiff's dementia qualifies as a severe impairment but at the same time conclude that the dementia diagnosis was not supported by the record.

Furthermore, Dr. Warner relied on objective testing to support the dementia diagnosis. Tr. 296. Testing showed that plaintiff's delayed memory is in the first percentile, indicating that her ability to retain information is significantly impaired. Tr. 295. Additionally, her fine motor skills are in less than the first percentile for her right hand and in the second percentile for her left hand, indicating significant bilateral impairment for fine motor speed and manual dexterity. Tr. 295, 296. Thus, contrary to the ALJ's findings, there was objective corroborating evidence of plaintiff's dementia.

The ALJ also gave partial weight to Dr. Warner's opinion because plaintiff's "statements to Dr. Warner about her limited activities of daily living are not consistent with her other statements of record." Tr. 25. The ALJ specifically questioned the fact that plaintiff told Dr. Warner "she did not attend to the shopping or use public transportation due to anxiety," when the record "shows she does attend to the shopping." Tr. 24. As previously discussed, however, plaintiff only stated that she avoids shopping. Tr. 294. The ALJ further noted that plaintiff told Dr. Warner she maintained her hygiene and prepared meals. Tr. 24. The ALJ generally concluded that plaintiff is "independent in her activities of daily living" and able to "engage in typical activities of daily living without difficulty." *Id.* However, plaintiff reported to Dr. Warner and others that she requires help and reminders to complete many tasks. Tr. 45, 49, 168-

69, 294. She also told Dr. Warner that she "never leaves the kitchen for fear that she might leave food cooking on the stove." Tr. 294. Thus, plaintiff's statements to Dr. Warner about her activities are not inconsistent with the record and therefore not a proper reason for the ALJ to discount Dr. Warner's report.

Additionally, the ALJ found that plaintiff's statements were inconsistent in that she told Dr. Warner about certain symptoms of dementia, such as hearing voices or smelling strange odors, but she did not make such statements to her treating medical providers. Tr. 24. The ALJ placed "greater weight in those statements made in pursuit of treatment as opposed to those made in pursuit of disability benefits[.]" *Id.* However, as discussed above, objective testing placed plaintiff below the first percentile in delayed memory, which supports Dr. Warner's assessment of plaintiff's memory impairments. Test results also placed plaintiff in the first percentile in her ability to maintain attention, which supports Dr. Warner's findings regarding the limitations in plaintiff's ability to stay on task and maintain concentration and attention, as well as the limitation on her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms. The fact that plaintiff did not report to her treating providers that she was hearing voices or smelling strange odors is ultimately inconsequential to plaintiff's memory and concentration impairments, and the ALJ erred by ignoring the objective test results in this area.[3]

---

[3] The ALJ did not explicitly reject Dr. Warner's determinations regarding plaintiff's attention; however, the ALJ noted that plaintiff's scores on the Trails Making tests demonstrated a somewhat higher degree of functioning than the RBANS test, which placed plaintiff in the first percentile. Tr. 24. The Trails Making tests indicated that plaintiff functioned in the borderline to low average range with regard to attention. This is consistent with Dr. Warner's ultimate assessment that plaintiff "ranges from impaired to low average ability" in attention. Tr. 295.

The Commissioner argues that testing showing plaintiff had impaired fine motor skills is inconsistent with her other physical examinations, which were normal. Def. Br. 17, ECF #19. Nevertheless, the record reflects that Dr. Warner was the only physician who tested plaintiff's fine motor skills. Therefore, other physical examinations that reported normal findings, but did not include objective testing of plaintiff's fine motor skills, are not inconsistent.

The Commissioner also appears to argue that the mental status examination performed by Dr. Steinbrenner was inconsistent with the objective tests administered by Dr. Warner. Def. Br. 17, ECF #19. However, Dr. Warner specializes in mental health and Dr. Steinbrenner does not. Tr. 291, 491. Moreover, Dr. Steinbrenner only performed a mental status examination whereas Dr. Warner, in addition to performing a mental status examination, also performed a battery of objective tests, including: "Repeatable Battery for Assessment of Neuropsychological Status-Update (RBANS), Bender Gestalt II (motor test), Grooved Pegboard Test, Comprehensive Trail Making Tests, Wide Range Achievement Test-3 (WRAT-3), Millon Clinical Multiaxial Inventory-II, Neurological Questionnaire and Sentence Completion-Adult." Tr. 291. Additionally, regardless of the purported inconsistency between Dr. Steinbrenner's examination and Dr. Warner's testing, Dr. Steinbrenner ultimately concluded that plaintiff possibly had a memory impairment. Tr. 491.

Finally, the ALJ rejected Dr. Warner's opinion that minimal increases in mental demands or a change in environment would likely cause plaintiff to decompensate. Tr. 24. The ALJ noted that plaintiff had indicated on her adult function report that she can handle stress moderately well (5 or 6 out of 10) and can handle changes if she knows what they are. Tr. 21, 170. Because Dr. Warner's finding is inconsistent with plaintiff's own report, the ALJ properly rejected this part of the medical opinion. *See Tommasetti*, 533 F.3d at 1041 (holding that

specific, legitimate reasons for rejecting a physician's opinion may include its inconsistency with a claimant's testimony).

**B.  Dr. Shields**

The ALJ rejected Dr. Shields' opinion because he relied on Dr. Warner's diagnosis of dementia due to head trauma.  As addressed above, the ALJ improperly rejected Dr. Warner's diagnosis; therefore, this rationale for rejecting Dr. Shields' opinion fails.

The ALJ also rejected Dr. Shields' opinion because he relied on plaintiff's subjective report.  However, the Ninth Circuit has held that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).  In *Buck*, the court held that a clinical interview and a mental status evaluation conducted by the psychiatrist provided sufficient objective measures.  *Id.*  Here, Dr. Shields performed a clinical interview and mental status evaluation, in addition to reviewing records that included Dr. Warner's objective testing.  Tr. 492.

Additionally, the ALJ rejected the portion of Dr. Shields' evaluation related to plaintiff's limited persistence and pace because it was not based on any specific evidence or objective testing.  Tr. 25.  However, Dr. Shields relied on the testing performed by Dr. Warner, which showed that plaintiff's ability to maintain attention was in the first percentile.  Tr. 295, 492.

The ALJ further cited the fact that plaintiff told Dr. Shields she had some difficulty using the computer, and found it was inconsistent with plaintiff's testimony that she spends her time watching television and using the computer.  Tr. 25.  The fact that plaintiff experiences some difficulty in using the computer is not inconsistent with her statement that she uses the computer, and neither is her ability to watch television.

Dr. Shields opined that plaintiff was capable of carrying out simple instructions with mild social limitations, Tr. 498-99, and the ALJ found that Dr. Shield's opinion in this regard was consistent with the record as a whole. Tr. 25. Plaintiff contests that "in addressing Dr. Shields' opinion, the ALJ failed to appreciate the difference between [her] ability to physically carry out a simple task and her inability to remember instructions on a long-term basis without being reminded." Pl. Br. 11, ECF #14. In fact, Dr. Shields' report specifically states that plaintiff "appears capable of understanding, remembering, and carrying out short and simple instructions *immediately after presentation*," but notes that plaintiff would have trouble remembering novel instructions for longer periods of time. Tr. 496 (emphasis added). The ALJ failed to acknowledge the qualification "immediately after presentation." Tr. 25.

The Commissioner argues that the ALJ properly rejected Dr. Shields' opinion because plaintiff reported to Dr. Shields that she cut her wrists at the age of seven but she reported to Dr. Warner that she cut her wrists at the age of twelve. Def. Br. 18, ECF #19. The Commissioner also cites the fact that plaintiff reported to Dr. Shields that she had a history of passing out due to stress, but had reported to Dr. Warner that she had passed out due to dehydration. *Id.* Neither of these reasons were relied on by the ALJ; therefore, the Commissioner's arguments amount to impermissible post hoc rationalizations. *Bray v. Commissioner*, 554 F.3d 1219, 1225 (9th Cir. 2009). Furthermore, it is not clear how either of these issues relates to any of the conclusions reached by Dr. Shields. For these reasons, the Commissioner's arguments are unavailing.

### III.     Lay Witness Testimony

Lay-witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, an

ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r*, 807 F.3d 996,

1007 (9th Cir. 2015) (citations omitted). Further, the reasons provided must be "specific."

*Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v.*

*Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)).

Charlotte W., plaintiff's mother-in-law, provided a third-party function report on

plaintiff's behalf. Tr. 186-93. The ALJ found that Charlotte W.'s report was generally

consistent with and supportive of plaintiff's reported limitations. Tr. 21. The ALJ, however,

gave Charlotte W.'s report partial weight because Charlotte W. asserted that plaintiff did not

follow instructions well, could not focus longer than 15 minutes, and did not finish what she

started, which was directly contrary to plaintiff's own report. Tr. 21, 169. 191. This constitutes

a specific, germane reason to discount the lay witness testimony. *See Lewis v. Apfel,* 236 F.3d

503, 511 (9th Cir. 2001) (holding that the ALJ properly relied on inconsistencies between the lay

witness's testimony and the claimant's testimony).

## IV.     Step-Five Finding

The RFC reflects the most an individual can do. 20 C.F.R. §§ 404.1545, 416.945. In

formulating an RFC, the ALJ must consider all medically determinable impairments, including

those that are not "severe," and evaluate "all of the relevant medical and other evidence,"

including the claimant's testimony. *Id.*; SSR 96-8p, *available at* 1996 WL 374184. An ALJ

may rely on the testimony of a VE to determine whether a claimant retains the ability to perform

past relevant work at step four, or other work in the national or regional economy at step five.

*Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The ALJ is required to include only

those limitations that are supported by substantial evidence in the hypothetical posed to a VE.

*See id*. at 1163-65. "Conversely, an ALJ is not free to disregard properly supported limitations."

*Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). In other words, limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock*, 240 F.3d at 1163-65.

Because the ALJ did not include the limitations assessed by Dr. Warner and Dr. Shields in the hypothetical to the VE, the VE's testimony had no evidentiary value and it was error for the ALJ to rely on it.[4] *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)).

## V.      Remand

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021.

---

[4] Plaintiff contends that the ALJ failed to properly account for the medical opinion of Joshua Boyd, Psy.D., the state agency psychological consultant. Pl. Br. 11-12, 16-17, ECF #14. It is unnecessary to reach that issue to award plaintiff benefits. Therefore, the court does not consider it.

Here, the first requisite of the *Garrison* test is met, as the ALJ erroneously assessed the medical opinions of Dr. Warner and Dr. Shields. As to the second requisite, the record is fully developed, and further administrative proceedings would serve no useful purpose. In determining whether the record is fully developed, the court looks to whether there are "significant factual conflicts in the record between [the claimant's] testimony and objective medical evidence." *Treichler*, 775 F.3d at 1104.

Here, there are no significant factual conflicts. Plaintiff has been diagnosed with dementia, anxiety disorder, obesity, scoliosis, arthritis, and depression. Tr. 297, 329, 496. Her school records indicate that she had difficulties with short-term memory and she was placed in special education. Tr. 270, 279. Dr. Warner concludes that the severity of plaintiff's memory issues significantly interferes with her ability to attend to her activities of daily living. Tr. 297. That assessment is supported by objective testing, which shows that plaintiff's delayed memory is below the first percentile. Tr. 295. Dr. Warner also assessed that plaintiff is markedly limited in the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 304. This conclusion is supported by testing, which shows that plaintiff's ability to maintain attention is in the first percentile. Tr. 295.

Consistent with Dr. Warner's opinion, Dr. Shields concluded that plaintiff's long-term memory is "significantly impaired." Tr. 496. Dr. Shields explained that while plaintiff appears capable of "understanding, remembering, and carrying out short and simple instructions immediately after presentation," she is likely "to have significant difficulty remembering novel instructions for longer periods of time." *Id.* Dr. Shields also opined that due to plaintiff's "memory dysfunction," she should not manage her own funds. *Id.* Dr. Shields concluded that

plaintiff's persistence and pace were "expected to be adversely influenced by her neurocognitive deficits." *Id.*

The Commissioner argues that further proceedings are required because plaintiff reported that she heard voices and smelled strange odors only to Dr. Warner. Def. Br. 24, ECF #19. However, as discussed above, plaintiff's failure to report these specific symptoms to other providers is ultimately insignificant because Dr. Warner's conclusions are supported by objective testing. The Commissioner next argues that there is a conflict in the record because plaintiff "claimed mental impairment due to head trauma, but there was no objective evidence in the record to corroborate her impairments." *Id.* While there are no medical records regarding plaintiff's initial head trauma, there is objective testing to corroborate plaintiff's mental impairments. Additionally, further proceedings would serve no useful purpose because the initial head trauma occurred when plaintiff was a child, and it is unclear whether plaintiff received medical attention for all of her head injuries or that medical records would even be available decades later. Tr. 292. Indeed, it seems unlikely that plaintiff's abusive and alcoholic parents retained detailed medical records from plaintiff's childhood, which included foster care. Furthermore, plaintiff's long history of mental impairments is corroborated by school records, which show that she was in special education and had difficulties with memory. Tr. 270, 279.

As to the third requisite of the credit-as-true analysis, if the discredited evidence is credited as true, the ALJ would be required to find plaintiff disabled based on the improperly rejected medical opinion evidence. Dr. Warner concluded that plaintiff had marked limitations in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 304. Dr. Warner also assessed a marked limitation in the

ability to remember work-like procedures.  Tr. 303.  A marked limitation is defined on the form

that Dr. Warner completed as a "limitation which precludes the ability to perform the designated

activity on a regular and sustained basis."  *Id.*  This is sufficient evidence to demonstrate that

plaintiff cannot perform any work on a regular and continuing basis.  SSR 96-8p ("A 'regular

and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

The Commissioner argues that the "ALJ noted multiple inconsistencies in the record

which point to serious doubt of disability."  Def. Br. 24, ECF #19.  However, the Commissioner

fails to identify any of the purported inconsistencies.  Moreover, where each of the credit-as-true

factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to

whether the claimant is actually disabled."  *Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir.

2017) (citing *Garrison*, 759 F.3d at 1021).  This case is not one of those "rare instances."

## CONCLUSION

For the reasons discussed above, the Commissioner's decision is REVERSED and

REMANDED for immediate calculation and payment of benefits.

DATED August 26, 2019.


_____/s/ Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge